SNUG HARBOR PROPERTY OWNERS ASSOCIATION v. MARTIN CURRAN AND WIFE, CHRISTINE CURRAN, CHARLES C. FLOYD AND WIFE, BARBARA FLOYD

No. 811DC355

---

SNUG HARBOR PROPERTY OWNERS ASSOCIATION v. ALBERT F. WILLIAMS AND WIFE, BLANCHE W. WILLIAMS

No. 811DC354

(Filed 15 December 1981)

Deeds § 20— assessment covenants—indefiniteness—unenforceability by property owners' association

Covenants in deeds to owners of lots in a subdivision requiring the owners to be members of a property owners' association and to pay an annual fee of $35 to the association "for the maintenance and improvement of Snug Harbor Beach and its appearance, sanitation, easements, recreation areas and parks, and all utility expenses" or "for the maintenance of the recreation area and park" are not sufficiently certain and definite to be enforceable since the property to be maintained is not described with sufficient particularity and there is no standard by which the maintenance is to be judged. Furthermore, bylaws of the association requiring owners of lots in the subdivision to pay an

annual fee of $35 to the association "for the maintenance of roads and recreational facilities and as to the owners of camping lots, for maintenance of a comfort station" are unenforceable for the same reasons.

APPEAL by plaintiff from *Chaffin, Judge.* Order entered 10 November 1980 in District Court, PERQUIMANS County. Heard in the Court of Appeals 13 November 1981.

These cases were heard and appealed separately, although they have nearly identical facts and records. Pursuant to Rule 40 of the N.C. Rules of Appellate Procedure, we have consolidated these cases for purposes of this appeal.

Plaintiff is the owner of several parking lots, a park, comfort station, electrical system, and water system in the Snug Harbor Beach development. Plaintiff initiated these actions to recover arrearages of annual maintenance fees from defendants, owners of residential lots in Snug Harbor Beach. After reviewing plaintiff's verified complaints and exhibits (seven corporate documents which plaintiff incorporated by reference into its complaints) Judge Chaffin granted defendants' Rule 12(b)(6) motions to dismiss the actions for failure to state claims upon which relief could be granted.

In its complaints, plaintiff first alleges that defendants are obligated to pay an annual maintenance fee of $35.00 under restrictive covenants between defendants and the grantor in defendants' deeds, Yeopim Beach Corporation (YBC). The restrictive covenants originally provided, in pertinent part:

DECLARATION OF RESTRICTIVE COVENANTS

[I]f any person subsequently acquiring title to or possession of any lot or lots within said subdivision, or his or her heirs or assigns, shall violate any of the restrictions hereinafter set out, it shall be lawful for any person owning real property situated in said subdivision to institute legal proceedings against the person or persons violating any of said restrictions, and either to prevent him from so doing or recover damages for such violations or both. Invalidation of any of these covenants by judgment or court order shall in no wise affect any of the other provisions, which shall remain in full force and effect.

Property Owners Assoc. v. Curran and Property Owners Assoc. v. Williams

. . . .

12. Owners and purchasers of lots in this subdivision shall be required to pay to Yeopim Beach Corporation, its successors or assigns, the sum of $18 per year on the first day of May of each year for the maintenance of the recreation area and park, which sum shall be a lien on all of the property owned [by] Yeopim Beach Corporation in this subdivision subject to foreclosure as provided by law for sales under mortgages, etc., if not paid by June 15th of each year.

13. These covenants shall run with the land and shall be binding on all parties claiming under them for a period of 20 years and shall be extended for successive periods of ten years unless and prior to the expiration of any such 10 year period, an instrument signed by the owners of record of a majority of lots in the subdivision has been recorded changing or modifying said covenants in whole or in part.

14. Invalidation of any one of these covenants by judgment or decree shall no way affect any of the other provisions hereof which shall remain in full force and effect.

Subsequent amendments to the restrictive covenants were adopted and recorded by the members of the Property Owners Association. The amendment applicable to defendants' lots states:

MAINTENANCE ASSESSMENT: The owner of any lot shall pay to "Owner — Snug Harbor Property Owners Association", or its successors, or assigns, the sum of Thirty-five ($35.00) Dollars per lot per year on the first day of March of each year, for the maintenance and improvement of Snug Harbor Beach and its appearance, sanitation,

DEED BOOK 73, PAGE 173.

easements, recreation areas and parks, and all utility expenses, for the payment of which sum shall be a lien on all of the property owned by each respective property owner for his respective assessments in this subdivision, enforceable by sale as provided by law for sales under mortgages and foreclosures, if not paid by June 15th of each year.

Plaintiff's complaints also allege that defendants are obligated to pay their dues by a provision of the amended by-laws of the Snug Harbor Property Owners Association, a non-profit corporation.

Article III, Sec. 5 *Assessments and Privileges.* Upon purchasing one or more lots in the subdivision, Owner Members become obligated to pay to the Corporation the following sums annually:

a. Owners of camping lots in Section "P", the sum of $60.00.

b. All other Owner Members, the sum of $35.00.

such dues being for the maintenance of roads and recreational facilities and as to the owners of camping lots, for maintenance of a comfort station. Such annual dues are payable per lot. Such dues may be revised from time to time as determined by the Board of Governors, and approved by a majority vote of members at any general or special meeting where notice of such revision has been made to the membership. Only those members in good standing will be allowed to vote by written ballot with their name affixed. Any other ballots cast shall be void. . . .

From Judge Chaffin's granting of defendants' G.S. 1A-1, Rule 12(b)(6) motions to dismiss, plaintiff appeals.

*William J. Bentley, Sr., for plaintiff-appellant.*

*White, Hall, Mullen, Brumsey & Small, by Gerald F. White, for defendants-appellees.*

WELLS, Judge.

Plaintiff contends that the trial court erred in ruling that plaintiff's complaints failed to state claims upon which relief could be granted. We find that the rulings were proper and affirm.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief. The rule generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery. *Newton v. Insurance Co.,* 291 N.C.

105, 229 S.E. 2d 297 (1976); *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970); *Winborne v. Winborne*, 41 N.C. App. 756, 255 S.E. 2d 640 (1979), *disc. rev. denied*, 298 N.C. 305, 259 S.E. 2d 918 (1979). For the purposes of ruling on a motion to dismiss, the well-pleaded material allegations of the complaint are taken as admitted. *Grant v. Insurance Co.*, 295 N.C. 39, 243 S.E. 2d 894 (1978). Recognizing these established rules of pleadings, the question presented on this appeal is whether plaintiff has any right of recovery against defendants under either the restrictive covenants or the association's charter and by-laws.

The first question we address is whether the restrictive covenants are sufficiently certain and definite to be enforceable.[1]

[J]ust as covenants restricting the use of property are to be strictly construed against limitation on use, *Hege v. Sellers*, 241 N.C. 240, 84 S.E. 2d 892 (1954), and will not be enforced unless clear and unambiguous, *Hullett v. Grayson*, 265 N.C. 453, 144 S.E. 2d 206 (1965), even more so should covenants purporting to impose affirmative obligations on the grantee be strictly construed and not enforced unless the obligation be imposed in clear and unambiguous language which is sufficiently definite to guide the courts in its application.

*Property Owner's Assoc. v. Seifart*, 48 N.C. App. 286, 269 S.E. 2d 178 (1980). This is in accord with general principles of contract law, that the terms of a contract must be sufficiently definite that a court can enforce them. 3 Strong's N.C. Index 3d (1976), Contracts, § 3; 1 *Corbin on Contracts*, (2nd ed. 1963 and Supplement Part 1, 1980), § 95.

In determining the validity of these restrictive covenants, we look first to the purposes for which the dues are to be used. While the records before us appear to be identical, the wording of "Exhibit A—DECLARATION OF RESTRICTIVE COVENANTS" differs in each. In the Williams complaint, paragraph nine of the covenants lists the purposes to which the covenanted dues are to be applied as: "[m]aintenance and improvement of Snug Harbor

---

1. Plaintiff asserts that by majority vote of the membership of the Property Owners Association, it amended the restrictive covenants to reflect the change in dues from $18.00 to $35.00. To incorporate the purported amendments, the deeds would have had to have been re-executed, reacknowledged and redelivered. *Hege v. Sellers*, supra.

and its appearance, sanitation, easements, recreation areas and parks". The purposes stated in the covenants in the Curran complaint are even less specific. Paragraph 12 of the covenants provides that the dues shall be "[f]or the maintenance of the recreation area and park . . .".

This Court recently held in *Seifart*, supra, that the restrictive covenants of the Beech Mountain resort area were too vague to be enforceable[2] because: (1) there was no sufficient standard by which to measure liability for assessments, (2) the property to be maintained was not described with particularity, and (3) there was no means by which a court could review a determination by the Property Owners' Association as to which facilities it chose to maintain. Applying that analysis to this case, we find that although a specific dollar amount of annual dues was stated, the property to be maintained was described with even less particularity, and there is no standard by which the maintenance is to be judged. Accordingly, we find that these restrictive covenants are too vague to be enforceable. *Property Owner's Assoc. v. Seifart*, supra. Because we find these covenants to be unenforceably vague, it is not necessary for us to determine whether they are actually personal covenants, or real covenants which run with the land, as they are asserted to be. *Seifart*, supra.

Plaintiff also alleges that defendants are obligated to pay annual dues under the by-laws of the Property Owners Association, which were enacted pursuant to plaintiff's Articles of Incorporation. G.S. 55A-14. The statement of purpose in plaintiff's Charter suffers from the same lack of particularity with respect to the

---

2. The assessment provision applicable to Beech Mountain Condominium sites provided:

[I]t is agreed that each unit owner will join the "Beech Mountain Property Owners' Association" and shall maintain such membership so long as he owns the property, and shall pay reasonable annual assessment charges for road maintenance, recreational fees, and other charges assessed by the Association. . . .

The assessment provision applicable to Chalet sites stated: [T]he owner of any lot subject to these restrictions shall join the Beech Mountain Property Owners' Association, and shall pay all dues, fees, charges and assessments made by that organization, but not limited to charges for road maintenance, fire protection, and security services. The failure to pay these charges shall result in a lien upon the lot subject to foreclosure.

properties to be maintained and lack of standards as to mainte-
nance as did the restrictive covenants themselves:

ARTICLE III

The purposes for which the Corporation is organized are
to protect the value and usefulness of the property known as
Snug Harbor Beach, developed by Yeopim Beach Corporation
in Bethel Township, Perquimans County, North Carolina; to
establish, maintain and operate nonprofit social and recrea-
tional facilities for the mutual advantages to be derived
therefrom by the owners of property at Snug Harbor Beach;
and to engage in such other activities as may be to the
mutual benefit of the owners of property in said subdivision.

Plaintiff's by-laws were written with the same invalidating in-
definiteness. Although "[b]ylaws are, in a sense, a contract among
the shareholders", Robinson, *N.C. Corporation Law and Practice*
(2nd ed. 1974), § 4-9, these fee provisions contain no clear stand-
ard by which a court could determine which roads and recrea-
tional facilities were to be maintained, or to what degree, and for
this reason, they are unenforceable.

For the reasons stated, the judgment of the trial court is

Affirmed.

Judges MARTIN (Robert M.) and WEBB concur.